**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brenda S. Mendez,<br><br>         Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>         Defendant. | No. CV-13-00838-PHX-NVW<br><br>**ORDER** |

Plaintiff Brenda S. Mendez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

**I.  BACKGROUND**

Plaintiff was born in October 1975. She previously worked as a fast food worker and stock clerk. Among other impairments, she suffers from anxiety and panic attacks. She last worked in 2009 for a temporary employment service, which stopped calling her because she declined work due to panic attacks. She has presented on numerous occasions to both the emergency room and her primary care provider for chest pain, which has been diagnosed as likely caused by anxiety.

On July 21, 2010, Plaintiff applied for disability insurance benefits, alleging disability beginning May 1, 2009. On April 5, 2012, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On May 14, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On April 25, 2013, Plaintiff sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

## III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of

impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  If not, the ALJ proceeds to step four.  At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work.  § 404.1520(a)(4)(iv).  If so, the claimant is not disabled and the inquiry ends.  *Id.*  If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v).  If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2013, and that she has not engaged in substantial gainful activity since May 1, 2009.  At step two, the ALJ found that Plaintiff has the following severe impairments:  obesity, diabetes mellitus (controlled by diet), panic disorder, mood disorder, and borderline personality disorder.  The ALJ found that the record included numerous references to and diagnoses of chest pain due to anxiety, but no actual cardiac impairment.  The ALJ observed that Plaintiff has repeatedly complained of chest pain, typically during episodes of panic, as early as October 2006. Similar assessments were made in December 2008 and April 2010.

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ found Plaintiff has moderate restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with concentration, persistence, or pace.  The ALJ noted that some difficulties in concentration, persistence, or pace often accompany Plaintiff's diagnoses.

At step four, the ALJ considered the objective medical record, Plaintiff's subjective symptom testimony, a third-party function report, and medical source opinion evidence.  The ALJ found Plaintiff's testimony and prior statements to the Social

Security Administration regarding her alleged impairments and resulting functional limitations not fully credible. The ALJ afforded partial weight to the third-party statements of Plaintiff's father. The ALJ rejected Plaintiff's treating physician's statements and the opinions of two consultative examiners, but gave significant weight to the opinions of non-examining State agency psychological consultants.

The ALJ concluded that Plaintiff:

> has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) with additional mental limitations in that she is limited to simple, routine, and repetitive tasks involving only occasional interaction with the public, co-workers and supervisors. She needs to be employed in a low-stress job, with low-stress being defined as a job with few, if any, simple decisions made, only occasional changes in the work setting, and no fast-paced assembly line work.

The ALJ further found that Plaintiff is unable to perform any of her past relevant work. The vocational expert testified that "the restriction of only occasional contact with the public as well as the fast-paced nature of fast food work and the semi-skilled nature of the stocker work would preclude the successful performance of same" by a hypothetical individual with Plaintiff's residual functional capacity.

At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. To reach this conclusion, the ALJ relied on the impartial vocational expert's opinion that an individual with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform the requirements of representative occupations such as "kitchen helper" (DOT #318.687-010),[1] "cook helper" (DOT #317.687-010), and "maids/housecleaners" (DOT #323.687-014).

---

[1] Both the hearing transcript and the ALJ's hearing decision incorrectly identify the DOT number for "kitchen helper" as 318.**3**87-010, instead of 318.**6**87-010. To avoid confusion, only the correct DOT number is used in this Order.

## IV. ANALYSIS

### A. The ALJ Erred in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* at 830. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.*; *Orn*, 495 F.3d at 632.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31. The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Lester*, 81 F.3d at 831.

"Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it." *Ghanim v. Colvin*, __ F.3d __, 2014 WL 4056530, at * 5 (9th Cir. Aug. 18, 2014). Unless the ALJ gives a treating source's opinion controlling weight, the ALJ must consider all of the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6): length of the treatment relationship, frequency of examination, nature and extent of the treatment

relationship, supportability of the source's opinion with medical evidence, consistency of the source's opinion with the record as a whole, and specialization. *Id.*

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. July 14, 2014).

### 2. The ALJ's Hearing Decision

The ALJ rejected the opinions of treating physician Dr. Houlihan and consultative examiners Drs. Kahane and Geary without identifying any medical opinions that contradicted them. The ALJ gave "significant weight" to the opinions of non-examining State agency consultants, both of whom gave "great weight" to the opinion of Dr. Geary.

The ALJ did not say she gave some weight or any weight to Dr. Houlihan's opinions; she rejected them entirely. The ALJ stated the following reasons for rejecting Dr. Houlihan's opinions: some of his statements were conclusory while imposing significant limitations; his cursory treatment records either did not document the limitations or contained only Plaintiff's subjective complaints and diagnoses; he found physical limitations although he identified only "severe anxiety" as her impairment; and there were "no objective clinical or diagnostic findings supportive of the claimant's limitations." However, the medical records show that Plaintiff suffers from anxiety and panic attacks, which cause chest pain, heart palpitation, and shortness of breath, for which she has sought emergency room treatment and was prescribed medication. Moreover, in rejecting treating physician Dr. Houlihan's opinion, the ALJ was required to and did not expressly consider all of the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6). Yet, despite expressly rejecting Dr. Houlihan's opinions, the ALJ found Plaintiff's residual functional capacity required both physical and significant mental limitations and appears to have given Dr. Houlihan's opinions some degree of weight.

The ALJ stated she rejected Dr. Kahane's opinion because it relied almost completely on Plaintiff's subjective reported symptoms and functioning, and some of the conclusions regarding limitations were contradicted by Dr. Kahane's observation notes. For example, the ALJ said that Dr. Kahane opined that Plaintiff currently is unable to complete simple or repetitive tasks, but "had good concentration for the interview." In fact, Dr. Kahane said Plaintiff "had difficulty with concentration due to anxiety and had some mild panic while here, so she had difficulty focusing." But then Dr. Kahane's next statements were: "Her concentration seems to be clear. Limited to the anxiety and panic attacks."

The ALJ stated she rejected Dr. Geary's opinion because its wording was vague and imprecise, it failed to give specific work-related limitations, and it was largely based on Plaintiff's subjective complaints, even though it was more consistent with the limited treatment evidence of record than was Dr. Kahane's. The ALJ said Dr. Geary's evaluation and findings were of limited value because he found that Plaintiff "gave 'obviously poor effort' on the mental status examination and maintained an exaggerated demeanor throughout the evaluation." In fact, Dr. Geary's opinion was not vague and imprecise, did give work-related limitations, and included observations as well as Plaintiff's subjective complaints:

> Ms. Mendez does not seem limited in her ability to understand or remember information. She appears to be moderately limited in her ability to sustain concentration and persist at tasks. She seems distractible and her pace would be interrupted by anxiety. Brenda would require monitoring and supervision on a job. Ms. Mendez seems moderately limited in social interaction. She apparently has trouble getting along with other people, she is clearly self-centered, and she has a poorly controlled temper. Ms. Mendez also seems moderately limited in adaptation. She is diminished in her ability to cope with customary work stress and it appears unlikely that Brenda is motivated to maintain regular attendance. The prognosis in this case is guarded, though it might improve if Brenda learns and practices anxiety management techniques in her counseling. Ms. Mendez seems marginally capable of independently managing benefits.

Moreover, the ALJ's determination that Plaintiff "is limited to simple, routine, and repetitive tasks involving only occasional interaction with the public, co-workers and supervisors," and needs "only occasional changes in the work setting" is consistent with, and likely derived from, Dr. Geary's opinion.

The ALJ stated she gave "significant weight to the opinions of the State agency psychological consultants, as both are generally consistent with the residual functional capacity found above, as well as the treatment records in evidence." But the ALJ did not identify the State agency psychological consultants, the substance of their opinions, the explanations supporting their opinions, or whether their opinions contradicted those of Drs. Houlihan, Kahane, and Geary. Moreover, both opinions gave "great weight" to Dr. Geary's opinion, which the ALJ rejected.

Since the State agency psychological consultants were the only sources to which the ALJ gave any weight at all, their opinions and "the limited treatment record" were the only evidence the ALJ acknowledged considering to determine Plaintiff's residual functional capacity. Yet the ALJ gave the non-examining consultants' opinions significant weight *because* they were consistent with the ALJ's residual functional capacity assessment.

Thus, the ALJ's explanation of her weighing of medical source evidence makes it impossible to determine whether it is supported by substantial evidence, but it is plainly not free from legal error.

### B. The ALJ Erred in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy

requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Id.* at 1014.

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

The ALJ stated that Plaintiff testified she stopped working because she could not control her panic attacks and that the attacks were exacerbated by unexpected changes throughout the day, including the on-call nature of her last position. The ALJ also stated that Plaintiff testified she has frequent, daily headaches, which her doctor opined likely were caused by stress and anxiety. The ALJ stated that Plaintiff testified she takes Xanax to relieve her symptoms of panic and anxiety, but it makes her sleepy and unable to function.

But the ALJ did not find Plaintiff to be malingering. The ALJ stated she found Plaintiff's statements not credible because she was not hospitalized for her anxiety, she sought sporadic treatment for her panic symptoms at the emergency room, her primary care provider did not refer her for a psychiatric evaluation until months after her alleged date of disability, she missed some of her therapy appointments, and some panic attacks were triggered by "increased life stressors." The ALJ also noted some inconsistencies in Plaintiff's testimony, such as alternate explanations for why she had not participated in treatment and whether or not she ever spends time alone, which may not be inconsistent if Plaintiff was referring to different time periods.

The ALJ found "a number of non-medical related issues further impugn her limited credibility in this matter." First, the ALJ noted that Plaintiff had applied for and received unemployment benefits, which ended in April 2010 and does not disqualify

Plaintiff from receiving Social Security disability benefits. Second, the ALJ observed that on several occasions Plaintiff reported she had stopped using methamphetamines about 2000 and at other times she said she stopped around 2003 or 2004. In 2010, she reported that her children were dysfunctional, her daughter smoked marijuana daily, and she had tried to get Plaintiff to use marijuana to calm her anxiety.

The ALJ may have had specific, clear, and convincing reasons for finding that Plaintiff exaggerated the intensity, persistence, and limiting effects of her symptoms. In passing, the ALJ notes that Plaintiff's "testimony regarding lying down 'all day,' having panic attacks 'all day,' and becoming angry 'all day' is extreme and simply impossible." Defendant has identified record evidence contradicting this testimony, but the ALJ did not. The ALJ said only that she found Plaintiff's statements not credible to the extent they were inconsistent with the residual functional capacity assessment—not that they were inconsistent with other evidence of record. Further, the ALJ did not identify which statements she found not credible. As with weighing medical source evidence, the ALJ's rambling explanation of her credibility determination is not free from legal error and fails to show that it is supported by substantial evidence.

### C. The ALJ Erred in Weighing a Third-Party Function Report.

Plaintiff contends that the ALJ committed legal error by giving little weight to a third-party report by Plaintiff's father, Albert Mendez. When an ALJ discounts the testimony of lay witnesses, he must give reasons that are germane to each witness. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693-94 (9th Cir. 2009).

The ALJ said she gave only partial weight to Mr. Mendez's statements "because of their inconsistency with the objective medical record" and because "it is also likely that his statements are biased given his close relationship with the claimant." Social Security Regulations identify parents as among the non-medical sources whose statements may show the severity of a claimant's impairment and how it affects the claimant's ability to work. 20 C.F.R. § 416.913(d)(4). It would render the regulation

meaningless if every parent's opinion was discounted merely because it is likely to be biased.

The ALJ may discount Mr. Mendez's statements because of their inconsistency with the objective medical record, but must give reasons germane to Mr. Mendez. At the very least, the ALJ must identify which of Mr. Mendez's statements are inconsistent with other evidence of record and therefore were not given any weight.

### D. The ALJ Failed to Obtain Reliable Vocational Information.

#### 1. Legal Standard

At step five, after determining that Plaintiff's disabilities prevent her from doing her past relevant work, the ALJ was required to decide whether Plaintiff's impairments prevent her from performing other work that exists in the national economy, considering her residual functional capacity together with the "vocational factors" of age, education, and work experience. Social Security Policy Ruling ("SSR") 00-4p (12/4/00). Work is considered as existing in the national economy when both (1) its requirements can be met by the claimant with his or her physical or mental abilities and vocational qualifications, and (2) it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a), (b).

The Commissioner will take administrative notice of reliable job information from various governmental and other publications, but relies primarily on the Dictionary of Occupational Titles ("DOT"), published by the Department of Labor and its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles. 20 C.F.R. § 404.1566(d); SSR 00-4p. The Commissioner also may use the services of a vocational expert or other specialist to determine whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e). "An ALJ may take administrative notice of any reliable job information, including information provided by a [vocational expert]." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

- 11 -

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). When a vocational expert provides evidence about the requirements of a job, the ALJ "has an affirmative responsibility to ask about any possible conflict" between the expert evidence and information provided in the DOT. SSR 00-4p. When there is an apparent conflict between occupational evidence provided by a vocational expert and the DOT, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the claimant is disabled." *Id.* Neither source of evidence "automatically 'trumps' when there is a conflict." *Id.* The ALJ must resolve the conflict by determining if the explanation given by the vocational expert is reasonable and provides a basis for relying on the vocational expert's testimony rather than on the DOT. *Id.* A vocational expert may have occupational information not listed in the DOT. *Id.*

### 2. The ALJ's Hearing Decision

During the hearing, the ALJ asked the vocational expert questions about a hypothetical individual who "is limited to simple, routine, and repetitive tasks; tasks involving only occasional interaction with the public, coworkers, and supervisors; and she needs to be employed in a low-stress job, and by that I mean a job with few, if any, simple decisions made; only occasional changes in the work setting; and no fast-paced assembly line work." (Tr. 21, Doc. 12-3 at 57.) The vocational expert opined that such an individual could not perform Plaintiff's past work because stocking shelves at Wal-Mart is semiskilled work, the fast food worker job requires constant public contact, and "there's quite a bit of stress in those jobs." (Tr. 22, Doc. 12-3 at 58.) He further opined that such an individual could perform jobs such as "kitchen helper" (DOT #318.687-010), "cook helper" (DOT #317.687-010), and "maids/housecleaners" (DOT #323.687-014).

The ALJ erred by failing to ask whether the vocational expert's opinion conflicted with the DOT and, if so, whether there was an explanation for the conflict. Instead, the ALJ wrote in her decision that she:

> has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles with respect to all issues. However, it is noted that his testimony regarding the issues of "off task" and "absenteeism" are not addressed by the DOT but are instead based upon his vast knowledge, expertise, and years of experience in the field of vocational rehabilitation.

(Doc. 12-3 at 27.) The ALJ did not explain how she had determined that the vocational expert's testimony was consistent with the DOT "with respect to all issues." The ALJ's determination may be supported by substantial evidence, but the ALJ did not disclose what that evidence is.

The ALJ also stated that "the vocational expert opined (numerous times) that each of these representative occupations were 'low stress' and do not contain the fast-paced requirements common with fast food type work." (*Id.*) But the vocational expert admittedly did not have knowledge or experience to render these opinions. When asked whether he considered the representative jobs to be "low-stress and not high, fast-paced," the vocational expert responded that being a kitchen helper is different from a fast-food job because "that's a completely different work environment." (*Id.*) When probed further, the vocational expert testified, "You know, to be honest, I don't—I can't answer that question honestly because I've never observed people doing this kind of work." (*Id.* at 63.) He also stated that he had never observed people doing the cook helper job either. (*Id.*) He reasoned that these jobs would be "low-stress and not high, fast-paced" only because they were simple, routine, and repetitive and involved minimal contact with supervisors and coworkers. (*Id.*) When asked about the hotel maid job, the vocational expert testified that over many years of staying in hotels, he had "run into the maids a handful of times," and he believed that the job was simple, routine, and repetitive. (*Id.* at 64.) He provided no basis for his assumption that simple, routine, and repetitive tasks are

necessarily low-stress and not fast-paced. The expert had no occupational information from outside the DOT, other than running into hotel maids a few times, that supported finding that "kitchen helper," "cook helper," and "maids/housecleaners" jobs are "low-stress and not high, fast-paced."

The DOT describes "kitchen helper" (DOT #318.687-010), "cook helper" (DOT #317.687-010), and "maids/housecleaners" (DOT #323.687-014) as continuously performing repetitive or short-cycle work and involving a combination of duties. It does not offer any basis for finding these jobs to be "low stress" and "not fast-paced," much less as involving no more than a few simple decisions, only occasional changes in the work setting, and only occasional interaction with supervisors.

The ALJ committed legal error by failing to obtain reliable job information required to decide whether Plaintiff's impairments prevent her from performing other work that exists in the national economy, considering her residual functional capacity, education, and work experience.

### E.  Remand

If the ALJ's decision is not supported by substantial evidence or suffers from legal error, the district court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).

To remand for immediate award of benefits, the Court must find:

(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited

evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020. Here, the record is not fully developed regarding Plaintiff's residual functional capacity and whether jobs exist in significant numbers in the national economy that Plaintiff can perform. Therefore, the case will be remanded for further administrative proceedings.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is VACATED and this case is REMANDED for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 25th day of September, 2014.

_____
Neil V. Wake
United States District Judge

- 15 -